**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carrie M Noderer, | No. CV-21-00718-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Carrie M. Noderer's application for Disability Insurance Benefits under the Social Security Act. Noderer filed a Complaint with this Court on April 23, 2021, seeking review of the denial of benefits. (Doc. 1.) Defendant Commissioner filed an Answer on August 19, 2021. (Doc. 11.) The Court now addresses Noderer's Opening Brief (Doc. 15), Defendant's Response Brief (Doc. 16), and Noderer's Reply Brief (Doc. 17.) The Court has reviewed the briefs and the administrative record (Doc. 12, "R.") and now reverses and remands for further proceedings.

**I.     BACKGROUND**

Noderer filed an application for Title II Disability Insurance Benefits on January 22, 2018, alleging disability beginning January 17, 2018. (R. at 17.) Noderer later amended her alleged onset date to the closed period between January 24, 2018, and July 23, 2019. (R. at 196.) Noderer's application was denied initially on May 18, 2018 (R. at 60–68), and upon reconsideration on November 14, 2018. (R. at 71–82.) Noderer subsequently

requested a hearing, held on March 30, 2020 (R. at 31–57), and an ALJ issued a decision denying Noderer's application on April 21, 2020. (R. at 14–26.) The Appeals Council upheld the ALJ's decision on March 1, 2021, and the ALJ's decision became final. (R. at 1.) Following this unfavorable decision, Noderer filed the present appeal.

After considering the medical evidence and opinions, the ALJ determined that Noderer had not engaged in substantial gainful activity between January 17, 2018, and July 28, 2019. (R. at 19.) The ALJ found that Noderer had two severe impairments—bipolar disorder and major depressive disorder—but she did not have an impairment that met or equaled an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*) The ALJ further determined that Noderer's mental impairments did not satisfy paragraph B criteria. (R. at 19–20.)

In assessing Noderer's residual functional capacity, the ALJ found that Noderer's symptom testimony was inconsistent with the evidence of record. (R. at 22–23.) With respect to the medical opinions, the ALJ discredited the opinions of Noderer's treating physicians, Marilyn Keiffer-Andrews, Ph.D., and Robert Williams, M.D., but he did not expressly state how persuasive he found either opinion. (R. at 23.) Instead, the ALJ found persuasive the opinion of the consultative examiner and found less persuasive the opinions of the State reviewing medical consultants. (R. at 23–24.) Ultimately, the ALJ determined that Noderer "had the residual functional capacity to perform a full range of work at all exertional levels," but Noderer could only perform "simple, routine tasks," "make simple work-related decisions," and "occasionally interact with supervisors, coworkers[,] and the public." (R. at 21.) Relying on the testimony of a vocational expert, the ALJ determined that Noderer could not perform past relevant work but could perform the jobs of laundry worker, hand packager, and small parts assembler. (R. at 24–25.) Consequently, the ALJ concluded that Noderer was not disabled. (R. at 25–26.)

**II.      LEGAL STANDARD**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a "reasonable mind might accept as adequate to support a conclusion" considering the record as a whole. *Id.* (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). Finally, the Court may not reverse an ALJ's decision on account of an error that is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1119 n.11 (9th Cir. 2012) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations and internal quotation marks omitted).

     To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments

meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if not, the claimant is disabled. *Id.*

## III. ANALYSIS

Noderer raises four arguments for the Court's consideration: (1) the ALJ erred in rejecting the opinions of her treating physicians; (2) the ALJ erred in rejecting her symptom testimony; (3) the ALJ erred in rejecting her mother's lay witness testimony; and (4) the ALJ improperly relied on vocational expert testimony given in response to an incomplete hypothetical. (Doc. 15 at 1–2.) Noderer requests that the Court remand her case for a computation of benefits under the credit-as-true rule. (*Id*. at 19–20.) Defendant asks the Court to affirm or, if the Court finds error, to remand for further administrative proceedings. (Doc. 16 at 24–25.)

### A. Treating Physician Opinions

Noderer first argues that the ALJ did not provide legally sufficient reasons to reject the opinions of her treating providers, Marilyn Keiffer-Andrews, R.N.P., Ph.D., and Robert Williams, M.D. (Doc. 15 at 6–13.)

#### 1. Applicable Standard

In 2017, the rules for evaluating medical evidence were revised. For claims filed on or after March 27, 2017, including this one, the revised rules apply. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (January 18, 2017). Under the revised rules, all evidence an ALJ receives is considered, but the rules create specific articulation requirements regarding how medical opinions and prior

administrative medical findings are considered. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The revised rules do not require an ALJ to defer to or assign every medical opinion a specific evidentiary weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ determines the persuasiveness of the piece of evidence's findings based on factors outlined in the regulations. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The most important factors are consistency and supportability, but the regulations list others that may be considered: the treatment relationship, specialization, and whether the source has familiarity with other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c).

Regardless of whether the source is an "accepted medical source[]," the revised rules require ALJs to articulate how they consider medical opinions from all medical sources. 20 C.F.R. §§ 404.1520c, 416.920c ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). The revised rules also expanded the list of acceptable medical sources to include licensed audiologists, licensed advance practice registered nurses, and licensed physician assistants. *See* 20 C.F.R. §§ 404.1502, 416.902. These articulation requirements do not apply to the consideration of evidence from nonmedical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

Although it was debated for years, recently, the Ninth Circuit definitively ruled that the "specific and legitimate" standard does not apply to Social Security cases after the regulations were revised. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from

certain sources necessarily favors the evidence from those sources—contrary to the revised regulations."). Thus, an ALJ need not give specific and legitimate reasons for disregarding the opinion of a treating physician. *Id.* at 791.[1]

### 2.    Dr. Keiffer-Andrews' Opinion

Marilyn Keiffer-Andrews, R.N.P., Ph.D., completed two medical source statements in July 2018. (R. at 23.) Dr. Keiffer-Andrews opined that Noderer had depressive and bipolar disorders, satisfying the requirements of Listing 12.04, and indicated that Noderer's disorders were "serious and persistent" such that Noderer had marginal adjustment. (R. at 350; R. at 349–50.) In a Mental Residual Functional Capacity Assessment, Dr. Keiffer-Andrews indicated that Noderer had moderate to moderately severe difficulty with understanding and memory, mild to severe difficulty with sustained concentration and persistence, moderate to moderately severe difficulty with social interaction, and mild to moderately severe difficulty with adaptation. (R. at 351–52.)

The ALJ acknowledged that Noderer's impairments caused certain limitations, but he found that the medical evidence did not support the severity of Dr. Keiffer-Andrews' opined limitations. (R. at 23.) Specifically, Noderer scored 29/30 on a Mini Mental Status Exam ("MMSE"), suggesting greater abilities than what Dr. Keiffer-Andrews found. (R. at 23, 343.) In addition, records noted that Noderer's bipolar disorder and insomnia were under control and her anxiety was under partial control, which did not support Dr. Keiffer-Andrews' opinions. (R. at 23; *see, e.g.*, R. at 304.) The ALJ did not expressly conclude whether he found Dr. Keiffer-Andrews' opinion unpersuasive or partially persuasive. (R. at 23.)

The ALJ did not sufficiently articulate his finding of persuasiveness. At the outset, the ALJ only addressed the supportability factor of Dr. Keiffer-Andrews' opinion and failed to address the factor of consistency. *See* 20 C.F.R. § 404.1520c(b)(2) ("[W]e will

---

[1] This case was fully briefed in December of 2021, over 4 months before the *Woods* opinion was published. 32 F.4th at 785. Accordingly, the Court does not fault Noderer for mentioning the "specific and legitimate" standard in her briefing. (*See* Docs. 15, 17.) But the Court will not address these arguments because, as it has explained, the Ninth Circuit has closed all debate regarding whether the "specific and legitimate" standard should be applied here. *Woods*, 32 F.4th at 792.

explain how we considered the supportability and consistency factors for a medical source's medical opinions"). As for the ALJ's reasons regarding supportability, the Court finds them insufficient. Although an MMSE measures cognitive function, Noderer's limitations stem from her bipolar and major depressive disorders, not a cognitive disorder. *See, e.g., Morris v. Berryhill*, 358 F. Supp. 3d 875, 882–83 (D. Ariz. 2019). The Ninth Circuit has recognized that "observations of cognitive functioning during therapy sessions do not contradict [a claimant's] reported symptoms of depression and social anxiety." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

As for records showing that Noderer's conditions were under control or partial control, the ALJ's cited reasons are not persuasive. One treatment record is dated January 2017, over a year prior to the alleged onset of disability and almost a year prior to the death of Noderer's husband, which Noderer testified was an aggravating factor in her limitations. (R. at 21, 304.) A second treatment record, dated April 2018, indicates that although Noderer's insomnia was under control and her anxiety was under partial control, her bipolar disorder remained complicated with severe grief. (R. at 359.) Finally, two records from September 2018 and February 2019 state that Noderer's bipolar disorder was stable, but both records were prepared by Noderer's primary care providers at visits for other medical complaints. (R. at 393, 407.) Neither doctor performed a psychiatric exam. Further, a "stable" condition can be disabling; the ALJ did not offer any additional evidence to support a finding that Noderer's "stable" bipolar disorder was not disabling. *See Petty v. Astrue*, 550 F. Supp. 2d 1089, 1099 (D. Ariz. 2008) (superseded by statute on other grounds) ("[A] condition can be stable but disabling."). Accordingly, the ALJ erred in rejecting Dr. Keiffer-Andrews' opinions.

### 3. Dr. Williams' Opinion

Robert Williams, M.D., completed a medical source opinion in August 2018. (R. at 23.) Dr. Williams concluded that Noderer met Listing 12.04, as Noderer's past mood swings had included bipolar hypomania and depressive states. (R. at 23, 378.) Noderer had extreme or marked limitations in areas of mental functioning, and her disorders were

"serious and persistent," such that Noderer had marginal adjustment and ongoing medical treatment. (R. at 379.) In a Mental Residual Functional Capacity Assessment, Dr. Williams indicated that Noderer had moderately severe to severe difficulty with understanding and memory, moderately severe to severe difficulty with sustained concentration and persistence, moderate to moderately severe difficulty with social interaction, and mild to severe difficulty with adaptation. (R. at 354–55, 380–81.) Dr. Williams commented that Noderer was fully functional before her husband's death, but afterward, she developed severe depression and anxiety unresponsive to aggressive medical therapies. (R. at 356, 382.) In addition, Dr. Williams opined that Noderer was "totally disabled for all work." (R. at 356, 382.)

The ALJ found that Noderer's "reports of caring for her four children, traveling to Flagstaff and the Grand Canyon, attending church, and searching for employment" suggested greater functioning than Dr. Williams opined. (R. at 23; R. at 223–25, 386, 388–89.) In addition, psychiatric examinations noted normal speech, orientation, memory, cooperation, and insight, which did not support Dr. Williams' opinion. (R. at 23; *see, e.g.*, R. at 296, 360.) The ALJ did not expressly conclude whether he found Dr. Williams' opinion unpersuasive or partially persuasive.

The ALJ did not sufficiently articulate his consideration of persuasiveness. With respect to supportability, the ALJ provided substantial evidence for this factor. Normal attention, memory, and other psychiatric findings contradict Dr. Williams' opinion that Noderer would have difficulty with short and simple instructions, maintaining attention, and sustaining an ordinary routine without supervision. Under the prior SSA regulations, a conflict between a physician's opinion and the medical evidence of record was a valid reason to reject the physician's opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Such a conflict therefore also constitutes substantial evidence. An ALJ may also discount a physician's opinion that conflicts with a claimant's activities. *Ghanim*, 763 F.3d at 1162. Noderer argues that she had difficulty participating in the ALJ's cited activities, but the record contains conflicting evidence regarding this difficulty.

Regarding consistency, however, the ALJ did not articulate his consideration of this factor in his discussion of Dr. Williams' opinions. *See* 20 C.F.R. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions"). In failing to do so, the ALJ erred in his rejection of Dr. Williams' opinions.

4.      These Errors are Sufficient Grounds for Remand

Failing to properly consider Dr. Keiffer-Andrews' and Dr. Williams' medical opinions are sufficient grounds to remand this case. The ALJ must perform additional administrative proceedings to determine the proper weight to assign Dr. Keiffer-Andrews' and Dr. Williams' medical opinions. These proceedings will change the record regarding the ALJ's analysis of Noderer's symptom testimony and her mother's lay witness testimony. If any hypothetical questions are asked on remand, changes to the ALJ's consideration of the medical opinions, symptom testimony, and lay witness testimony would affect how the ALJ would formulate those questions. Thus, the record will be so thoroughly changed on remand that any additional conclusions drawn by this Court about the ALJ's decision regarding Noderer' symptom testimony, her mother's lay witness testimony, and the ALJ's hypothetical question would be irrelevant. For this reason, the Court forgoes ruling on the parties' arguments regarding these remaining issues.

**B.    Credit-as-True Rule**

After determining that the ALJ made an error sufficiently serious to warrant a remand, the Court decides whether it will apply the credit-as-true rule. The credit-as-true rule allows a court to remand a Social Security case for an award of benefits rather than remand the case for additional evidence. *Treichler*, 775 F.3d at 1101–02. Whether the credit-as-true rule is mandatory or discretionary in the Ninth Circuit is unclear because Ninth Circuit jurisprudence is split on the issue. *Compare Vasquez*, 572 F.3d at 593–94, *and Garrison v. Colvin*, 759 F.3d 995, 1019–23 (9th Cir. 2014), *with Treichler*, 775 F.3d at 1099–02. The rule can only be applied when three elements are met: "(1) the record has been fully developed and further administrative proceedings would serve no useful

purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even then, the rule is rarely applied because the decision to remand or apply the rule is discretionary and courts "frequently exercise[] [their] discretion to remand for further proceedings, rather than benefits." *Treichler*, 775 F.3d at 1102.

Even if Dr. Keiffer-Andrews' and Dr. Williams' medical opinions regarding Noderer's limitations were credited as true, further administrative proceedings would serve a useful purpose and the ALJ would not be required to find her disabled on remand. Further proceedings would be useful to allow the ALJ to reassess Noderer's symptom testimony and her mother's lay witness testimony. *Supra* Section III.A(4). The ALJ could then incorporate the new findings, as necessary, into any hypothetical posed to the vocational expert. *Id.* Additionally, other medical opinions conflicted with Dr. Keiffer-Andrews' and Dr. Williams' opinions. Thus, the ALJ would not be required to find Noderer disabled even if their medical opinions were credited as true. Elements (1) and (3) of the test articulated in *Garrison* are not met. Therefore, the Court will not apply the credit-as-true rule here.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the April 21, 2020, decision of the ALJ (R. at 14–26) is reversed.

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for further administrative proceedings.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment consistent with this Order and close this case.

Dated this 3rd day of June, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge